J-A30005-15

2015 PA Super 256

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STACI DAWSON | |
| Appellant | No. 3498 EDA 2014 |

Appeal from the Judgment of Sentence November 12, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000257-2014

BEFORE: MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

OPINION BY MUNDY, J.: **FILED DECEMBER 08, 2015**

Appellant, Staci Dawson, appeals from the November 12, 2014 aggregate judgment of sentence of 71½ to 143 months' imprisonment, followed by 84 months' probation, imposed after she was found guilty of two counts each of sale or transfer of firearms and criminal conspiracy, and one count of filing a false report.[1] After careful review, we affirm.

The trial court summarized the relevant factual history of this case as follows.

> On February 13, 2013, [Appellant] completed a Firearms Transaction Record Form and purchased a .40 Caliber Smith & Wesson pistol at Miller's Sporting

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6111(c), 903(c), and 4906(b)(1), respectively.

Goods in Linwood, Pennsylvania. She returned to Miller's Sporting Goods and purchased a second firearm, a Kel-Tec 9 mm. pistol, on February 27, 2013.

On March 5, 2013[,] Patrol Corporal William Carey executed a traffic stop in the City of Chester. The vehicle was stopped after a brief chase that ended when the fleeing vehicle crashed into a van. The vehicle that was the subject of that traffic stop was driven by [Appellant]'s boyfriend, David Colon. Shamar Atkinson was a passenger in the vehicle. Both of these men were known felons. Colon was found in possession of suspected cocaine and Atkinson had the fully loaded Kel-Tec 9 mm. pistol, serial number R7921 that [Appellant] purchased on February 27, 2013 tucked in his waistband. Both men were arrested.

In the course of an unrelated criminal investigation[,] Detective Robert Lythgoe of the Delaware County Criminal Investigation Division went to Miller's Sporting Goods looking for the names of recent purchasers of 9 mm. handguns. He learned there that [Appellant] purchased a 9 mm. handgun on February 27, 2013. On March 7, [2013,] he went to her reported address, 2018 West Fourth Street in Chester, Pennsylvania to see whether [Appellant]'s 9 mm. gun was the gun involved in the unrelated incident. [Appellant] was not at the residence. Her mother told the detective that [Appellant] no longer lived at that address and that she lived with her father. At about 4:00 p.m.[,] Detective Lythgoe went to the father's address and inquired into the whereabouts of the pistol that she purchased on February 27th. [Appellant] stated that the pistol was at her mother's home and that she was unable to retrieve it at that time. Later that evening, at about 7:00 p.m.[, Appellant] called Detective Lythgoe and reported that the gun was missing from her mother's house and, "[t]he only thing she could think of was that her boyfriend (David Colon) may have stolen the firearm." [Appellant] did not mention the second gun, the

Smith & Wesson that she purchased on February 13th. At this point[,] Detective Lythgoe did not know that [Appellant] owned two guns.

On March 8 & 9, 2013[,] David Colon called [Appellant] several times from the George Hill Correctional Facility (GHCF). Detective David Tyler of the Delaware County Criminal Investigation Division secured these tapes after he learned that David Colon was in GHCF and that Shamar Atkinson was arrested while in possession of [Appellant]'s Kel-Tec 9 mm. handgun. Portions of the recorded conversations were played for the jury and associated transcripts were entered into evidence. In the course of these conversations[, Appellant] tells Colon about Detective Lythgoe's March 7th visit and inquiry, that detectives were looking for a gun and that she thought "one of them" was probably used in the commission of a crime. Colon instruct[ed Appellant] to, "just tell them I don't know maybe my boyfriend, maybe one of his friends, maybe somebody stole it … All you can tell them is … is somebody took that [jawn]-somebody took them [jawn]." Colon t[old Appellant], "once they got the little black – once they type it in, everything going to pop up you see what I'm saying, what you got in your name, you see what I'm saying." Colon t[old Appellant] not to go to the police until they talk again. In another call[, Appellant] t[old] Colon that authorities told her to report the missing firearm: "Yeah, he said go over there and file a – an incident report or whatever. But I – I don't know which one like …. They didn't ever say which one. So I just gotta go over there and file both." During a third call[,] Colon ask[ed Appellant] if she [had] gone to the police station. She replie[d] that she [had not] gone yet. [Appellant told] Colon that Atkinson's girlfriend asked her to come to the preliminary hearing to help "Shamar" and that she is going to say that she forgot the gun and left it in the car. Colon respond[ed]: "NO- be no, no, no, no, no, no, no, no, no, no man. But you don't- you- no baby – no, no, no, [], no, no, no, no, no, no, no, no, no. … No they can't go around like that because you don't

- 3 -

got no license – you don't got no license to drive or to carry like so it –you was- nah babe no, no. That's going." [Appellant told] Colon that she doesn't know what to do when she goes to "the station" and Colon [said], repeatedly "I mean you got tell'em you ain't- if you can't find 'em you can't find'em," and instruct[ed] her to filed a report "for both" because her name will be in the system, suggesting that the existence of a second gun will be discovered.

On March 12, 2013[, Appellant] reported two firearms missing from her mother's residence, 2018 West Fourth Street, Chester. Officer Doug Staffelbach took the report. [Appellant] reported that she discovered that both of the guns were missing on March 7, 2013. She described the missing firearms as a "little 9" and a "Glock." The transaction record she offered however indicated that she had purchased a Smith & Wesson. [Appellant] said that her mother's home had been burglarized and that there were burglaries in the area so she purchased the guns for her own protection. After investigating, Officer Staffelbach found no reported burglaries in the area during the relevant time period.

Detective Tyler testified that he was initially assigned to this investigation after Detective Lythgoe reported that a [9 mm.] handgun that was used in the unrelated investigation was connected to [Appellant] and that she suggested that David Colon may have stolen it. Detective Tyler went to Miller's Sporting Goods and got a copy of the Firearms Transaction form for the February 27th purchase. On March 13, 2013[,] he contacted [Appellant] at her father's house and asked if she would speak with him about the gun that was found in Atkinson's possession. She agreed and followed Detective Tyler to the Chester Police Department where she gave a statement in which she discussed her purchase of the 9 mm. handgun and stated that she last saw it in the basement of her mother's house on March 3rd. She knew it was "PF 9" but did not know the caliber or make or model of this firearm and did not know

- 4 -

> what type of bullets it took. At no time during the interview did [Appellant] tell Detective Tyler that not one, but two firearms, had gone missing from her mother's basement and that she reported both missing the previous day. Detective Tyler learned that [Appellant] reported a second gun missing and after listening to the prison tape recordings he returned to Miller's in May and obtained the Transaction Form for the February 13th purchase.

Trial Court Opinion, 2/5/15, at 7-11 (internal citations omitted; some brackets in original).

On August 27, 2014, at the conclusion of a jury trial, the jury found Appellant guilty of two counts each of sale or transfer of firearms and criminal conspiracy, and one count of filing a false report.[2] On November 12, 2014, the trial court imposed an aggregate sentence of 71½ to 143 months' imprisonment, followed by 84 months' probation. Specifically, on the first Section 6111(c) count, the trial court sentenced Appellant to 11½ to 23 months' imprisonment, plus 24 months' probation. On the second Section 6111(c) charge, the trial court sentenced Appellant to 60 to 120 months' imprisonment, consistent with the mandatory minimum sentence provision at Section 6111(h)(1), plus 60 months' probation. The trial court also imposed a sentence of 3 to 6 months' imprisonment for filing a false

---

[2] This was Appellant's second trial. Appellant's first trial ended on May 14, 2014 with the jury unable to reach a verdict on the above-mentioned offenses, and finding her not guilty of several other offenses that are not relevant to this appeal.

report. The trial court did not impose any further penalty on the criminal conspiracy charges. The filing a false report sentence was to run concurrently to all other sentences; however, the two sentences for sale or transfer of firearms were to run consecutively to each other. Appellant filed a timely motion for reconsideration of sentence on November 20, 2014, which the trial court denied on December 2, 2014. On December 8, 2014, Appellant filed a timely notice of appeal.[3]

On appeal, Appellant raises the following three issues for our review.

> [1.] Whether the trial court erred in imposing the mandatory minimum sentence of 5 to 10 years on the second count of unlawful sale or transfer of firearms when [Appellant] was not previously convicted of this offense but was found guilty at the same trial for both counts?
>
> [2.] Did the [t]rial [c]ourt abuse its discretion in sentencing [Appellant] on Count 6, Firearms – Duty to Other Persons, to 5 to 10 years to be followed by 5 years of probation to run consecutive to her sentence on Count 5 of 11½ to 23 months to be followed by 2 years of probation, by failing to properly consider the Sentencing Code and Sentencing Guidelines 42 Pa.C.S.A. § 9701, et. [s]eq. in imposing this sentence?
>
> [3.] Did [t]he [t]rial [c]ourt err in denying [Appellant]'s [m]otion on Count 6, Firearms – Duty to Other Persons, as against the weight of the evidence where there was insufficient evidence regarding any change of ownership of

---

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

a second firearm by [Appellant] to any individual, lawful or otherwise?

Appellant's Brief at 4.

We address Appellant's third issue first, as the remedy for lack of sufficient evidence is a discharge order, rather than a new trial, and would render Appellant's remaining issues moot. *Commonwealth v. Stokes*, 38 A.3d 846, 853 (Pa. Super. 2011). We begin by noting our well-settled standard of review. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, *Patterson v. Pennsylvania*, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" *Id.* (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence

- 7 -

produced is free to believe all, part or none of the evidence." ***Id.*** (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

In this case, Appellant avers that the evidence was insufficient to sustain her conviction under Section 6111(c), which provides in relevant part, as follows.

> **§ 6111. Sale or transfer of firearms**
>
> **(a) Time and manner of delivery.--**
>
>> (1) Except as provided in paragraph (2), no seller shall deliver a firearm to the purchaser or transferee thereof until 48 hours shall have elapsed from the time of the application for the purchase thereof, and, when delivered, the firearm shall be securely wrapped and shall be unloaded.
>>
>> (2) Thirty days after publication in the Pennsylvania Bulletin that the Instantaneous Criminal History Records Check System has been established in accordance with the Brady Handgun Violence Prevention Act (Public Law 103-159, 18 U.S.C. § 921 et seq.), no seller shall deliver a firearm to the purchaser thereof until the provisions of this section have been satisfied, and, when delivered, the firearm shall be securely wrapped and shall be unloaded.
>>
>> …
>
> **(c) Duty of other persons.--**Any person who is not a licensed importer, manufacturer or dealer and who

> desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm. The provisions of this section shall not apply to transfers between spouses or to transfers between a parent and child or to transfers between grandparent and grandchild.
>
> …

18 Pa.C.S.A. § 6111. Appellant avers that there is insufficient evidence that she transferred the Smith & Wesson firearm to anyone through any means.[4] Appellant's Brief at 11. The Commonwealth counters that the jury was permitted to infer, primarily from her telephone conversations with Colon, that she gave the firearm to Colon or Atkinson. Commonwealth's Brief at 27.

In this case, the evidence at trial established that Appellant purchased the Smith & Wesson from Miller's Sporting Goods on February 13, 2013. After police visited her on March 7, 2013 about the 9 mm. Kel-Tec firearm, which ended up in Atkinson's possession, she did not mention the Smith & Wesson firearm to law enforcement. The next day, she discussed both firearms with Colon and indicated to him that she did not know whether to report just one or both stolen, because she did not know which firearm the police were inquiring about. Commonwealth's Exhibit C-11, at 8;

---

[4] Appellant does not challenge the conviction regarding the Kel-Tec firearm.

Commonwealth's Exhibit C-12, at 14. Colon instructed her to report both stolen, in part, because the police would discover the existence of the Smith & Wesson. Commonwealth's Exhibit C-11, at 8, 9; Commonwealth's Exhibit C-13, at 8, 9. Colon also offered to take the blame for stealing both firearms. *Id.* at 8.

In our view, the Commonwealth presented sufficient evidence to sustain the conviction. The evidence summarized above revealed the Appellant purchased two firearms, one of which ended up in the possession of another. The prison tapes reveal that Appellant did not have the Smith & Wesson in her possession and Colon offered to take responsibility for stealing them from her, which was not true. *Id.* at 8, 9; Commonwealth's Exhibit C-12, at 14. The jury was permitted to make the reasonable inference that this was because Appellant had given the Smith & Wesson to Colon and/or Atkinson and wished to evade responsibility for the same. Based on these considerations, Appellant's sufficiency challenge lacks merit.

We next consider Appellant's first issue, in which she avers that the trial court erred in imposing the mandatory minimum at Section 6111(h), because the second Section 6111(c) was not "previous" but rather a second conviction from this very case. Appellant's Brief at 11. The Commonwealth counters that Section 6111(h) has no such requirement, and the trial court properly applied the mandatory minimum sentence. Commonwealth's Brief at 18.

At the outset, we note that a challenge to the application of a mandatory minimum sentence pertains to the legality of the sentence, which presents a pure question of law that we review *de novo*. **Commonwealth v. Fennell**, 105 A.3d 13, 15 (Pa. Super. 2014) (citation omitted), *appeal denied*, 121 A.3d 494 (Pa. 2015). It is also well established that "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." **Id.** "An illegal sentence must be vacated." **Id.**

The instant dispute pertains to Section 6111(h)(1), which provides as follows.

### § 6111. Sale or transfer of firearms

…

**(h) Subsequent violation penalty.—**

(1) A second or subsequent violation of this section shall be a felony of the second degree. A person who **at the time of sentencing has been convicted** of another offense under this section shall be sentenced to a mandatory minimum sentence of imprisonment of five years. A second or subsequent offense shall also result in permanent revocation of any license to sell, import or manufacture a firearm.

…

(5) For the purposes of this subsection, a person shall be deemed to have been convicted of another offense under this section whether or not judgment of sentence has been imposed for that violation.

- 11 -

18 Pa.C.S.A. § 6111(h)(1), (5) (emphasis added). The dispute in this case is whether a previous conviction may include a separate charge in the same case for the purposes of Section 6111(h)(1).

When analyzing statutory text, we note the following.

> "Under the Statutory Construction Act of 1972, … our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." **Commonwealth v. Spence**, 91 A.3d 44, 46 (Pa. 2014) (citation omitted). "We are mindful that the object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly … and the best indication of the legislature's intent is the plain language of the statute." **Commonwealth v. Walter**, 93 A.3d 442, 450 (Pa. 2014) (citation omitted). "When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute under the pretext of pursuing its spirit." **Id.**, *citing* 1 Pa.C.S.A. § 1921(b). However, only "when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c) of the [Statutory Construction Act]." **Id.** at 450–451, *citing* 1 Pa.C.S.A. § 1921(c).

**In re D.M.W.**, 102 A.3d 492, 494 (Pa. Super. 2014).

In **Commonwealth v. Thompson**, 106 A.3d 742 (Pa. Super. 2014), this Court was confronted with a similar question as to whether a mandatory life sentence for two counts of third-degree murder under Section 9715 of the Sentencing Code, includes a situation when the first and second convictions are from the same case. Section 9715, provides in relevant part as follows.

**§ 9715. Life imprisonment for homicide**

**(a) Mandatory life imprisonment.--**
Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

…

42 Pa.C.S.A. § 9715(a). Following our decision in ***Commonwealth v. Morris***, 958 A.2d 569 (Pa. Super. 2008) (*en banc*), *appeal denied*, 991 A.2d 311 (Pa. 2010), we held in ***Thompson*** that the phrase "at any time" was unambiguous and concluded the statute required a life sentence for Thompson, even though his second conviction for third-degree murder arose from the same trial and information as the first conviction.

> Section 9715 specifically focuses upon whether, at the time of sentencing, a defendant has been previously convicted "at any time." The statute does not state that the two murders must be tried and sentenced separately. Indeed, the plain language of the statute requires that the trial court determine whether a previous conviction exists at the time of sentencing, without giving consideration to when the conviction occurred. Further, the statute does not make any distinction between convictions that arise from a single criminal episode and multiple criminal episodes. We are bound by the unambiguous language of this statute and we cannot insert

- 13 -

> additional requirements that the legislature has not included.

***Thompson***, ***supra*** at 761, *quoting* ***Morris***, ***supra*** at 581.

Turning back to Section 6111(h), we find ***Thompson*** instructive in resolving the issue presented in this case. Like Section 9715, Section 6111(h) "requires that the trial court determine whether a previous conviction exists at the time of sentencing, without giving consideration to when the conviction occurred." ***Id.*** The statute does not contain any textual limitations as to when the first and second convictions arose. Furthermore, Section 6111(h)(5) states that "a person shall be deemed to have been convicted of another offense under this section **whether or not judgment of sentence has been imposed for that violation**." 18 Pa.C.S.A. § 6111(h)(5) (emphasis added). In our view, the language of this subsection provides greater clarity than Section 9715's use of the phrase "at any time." 42 Pa.C.S.A. § 9715(a). Instantly, when the trial court sentenced Appellant on November 12, 2014, Appellant had been convicted of another Section 6111(c) offense, but the judgment of sentence had not been imposed. This situation is contemplated by Section 6111(h)(5)'s unambiguous text. Based on these considerations, we conclude the trial court correctly applied Section 6111(h)(1) to Appellant and the resultant sentence was legal. ***See Fennell***, ***supra***; ***D.M.W.***, ***supra***.

Finally, in her second issue, Appellant avers the trial court abused its discretion in imposing consecutive sentences for her two Section 6111(c)

convictions. Appellant's Brief at 13. At the outset, we note that this issue pertains to the discretionary aspects of her sentence. It is axiomatic that in this Commonwealth, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Tobin*, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant forwards an argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

> substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

In the case *sub judice*, we note that Appellant has failed to include a Rule 2119(f) statement in her brief, and the Commonwealth has noted its objection. Commonwealth's Brief at 31. "If a defendant fails to include an issue in his Rule 2119(f) statement, and the Commonwealth objects, then … this Court may not review the claim." ***Commonwealth v. Karns***, 50 A.3d 158, 166 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013). As the Commonwealth has lodged its objection, we deny Appellant's petition for permission to appeal the discretionary aspects of her sentence. ***See Trinidad***, ***supra***.

Based on the foregoing, we conclude all of Appellant's issues on appeal are waived or devoid of merit. Accordingly, the trial court's November 12, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/8/2015