J-A14035-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SETH LOUIS HAMILTON | : | |
| | : | |
| Appellant | : | No. 1581 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 1, 2019
in the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001277-2018,
CP-43-CR-0001881-2017

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED SEPTEMBER 10, 2020

Seth Louis Hamilton ("Hamilton") appeals from the judgment of sentence imposed following his convictions of two counts each of aggravated assault with a deadly weapon, receiving stolen property, and criminal conspiracy; and one count each of aggravated assault, criminal attempt, firearms not to be carried without a license, tampering with or fabricating physical evidence, theft from a motor vehicle, criminal conspiracy, theft by unlawful taking, possession of a small amount of marihuana, and possession

of drug paraphernalia.[1,2]  We affirm.

In its Opinion, the trial court set forth the relevant factual history as follows:

> On the evening of October 25, 2017, three young men conspired to rob [Hamilton].  The motive for the robbery was a debt Hamilton owed to one of the co-conspirators, Zachary Cutshall [("Cutshall")].  Under the guise of giving Hamilton a ride to Greenville, Pennsylvania[,] to purchase marijuana, [the second co-conspirator,] Jacob Barger [("Barger"),] stopped the vehicle in a remote location on Delaware [R]oad in Mercer County, Pennsylvania.  Barger and the third co-conspirator, Dominic Heasley [("Heasley")], then exited the vehicle using the excuse [that] they had to urinate.
>
> Upon [Barger and Heasley's return] to the vehicle, [Cutshall] pulled out what was later determined to be a BB pistol and robbed Hamilton.  [Cutshall] and Hamilton [were seated] in the back seat of the vehicle.  Cutshall [was] on the passenger side and Hamilton [was] on the driver side.  Due to the fact [that] it was night[time], and the fact [that] the BB pistol looked like a real handgun, Hamilton complied with Cutshall's demand to hand over his personal property, which included his wallet, cell phone, and a drawstring bag that contained a small amount of marijuana and some drug paraphernalia.  Cutshall then ordered Hamilton to get out of the vehicle.
>
> Unbeknownst to the three co-conspirators, Hamilton had a real handgun in his possession at the time of the robbery.  Coincidentally, he had stolen this handgun out of an unlocked pick-up truck the day before the robbery.  When he got out of the vehicle, Hamilton asked Barger whether he knew about the

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(4), 3925(a), 903(a)(1), 2702(a)(1), 901(a), 6106(a)(1), 4910(1), 3934(a), 3921(a); 35 P.S. § 780-113(a)(31), (32).

[2] Hamilton was acquitted of first-degree murder, attempt to commit first-degree murder, third-degree murder, and possession with intent to deliver a controlled substance.  See 18 Pa.C.S.A. §§ 2502(a), 901(a), 2502(c); 35 P.S. § 780-113(a)(30).

conspiracy. Barger acknowledged he did. Hamilton then pulled the handgun out of his waistband and, while holding the passenger door open, fired the handgun at [Cutshall] approximately five times. One round fatally struck Cutshall in the neck area.

Hamilton then proceeded around to the rear of the vehicle and fired more rounds through the back window. One of these rounds penetrated the front passenger seat and struck [Heasley] in the shoulder. Hamilton then fled into the woods. However, he later met up with Barger, Heasley, and the now[-]deceased Cutshall[] at the parking lot for Vaughn Chiropractic[,] where Barger had moved the vehicle. Hamilton remained there with them despite knowing that Heasley had placed a 911 call. The Pennsylvania State Police found the four of them at the site.

Trial Court Opinion, 12/30/19, at 1-2 (unnumbered).

On April 12, 2019, a jury found Hamilton guilty of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. Subsequently, the trial court sentenced Hamilton to an aggregate term of 15 to 30 years in prison, followed by four years of probation.[3] On October 1, 2019, the trial court entered an Order amending Hamilton's sentence for possession of a small amount of marihuana from one year of probation to one month of probation, to be served consecutively to all other counts.

_____

[3] The convictions for theft from a motor vehicle and criminal conspiracy to commit theft from a motor vehicle merged at sentencing with the count for receiving stolen property. The convictions for theft by unlawful taking, receiving stolen property, and criminal conspiracy to commit theft by unlawful taking merged at sentencing with the conviction for receiving stolen property.

Hamilton filed a post-sentence Motion requesting reconsideration of his sentence, which the trial court denied. Hamilton filed timely Notices of Appeal, one at each docket number, and a court-ordered Pa.R.A.P 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Hamilton raises the following questions for our review:

1. Did the [trial c]ourt err in directing a verdict of guilty on the gun possession charge and pre-empting self-defense?

2. Did the [trial c]ourt err in refusing [Hamilton's] requested point for charge #6 (justification of deadly force)?

3. Did the [trial c]ourt err in refusing [Hamilton's] requested point for charge #3 (defining robbery)?

4. Did the [trial c]ourt err in refusing [Hamilton's] requested point for charge #4 (voluntariness of confession)?

5. Did the [trial c]ourt err in reading the Commonwealth's points for charge #3, 4, 5 and 7 (Williams case)?

6. Were the [trial c]ourt's discretionary aspects of the sentence abused?

Brief for Appellant at 8-10.

In his first claim, Hamilton alleges that the trial court erred in its reading of the Commonwealth's requested jury instruction number 6, relating to Hamilton's defense of justification. Brief for Appellant at 32-36. Hamilton directs our attention to the trial court's statement that "[Hamilton] was not entitled to stand his ground and use deadly force in this case because he illegally possessed the firearm and legally [sic] concealed that firearm on his person. He had a duty to retreat." Id. at 34. Hamilton

claims that his actions were justified as self-defense in response to the co-conspirators robbing him at gunpoint. Hamilton argues that this instruction is a misstatement of law because it fails to acknowledge that Hamilton only had a duty to retreat if he could do so safely. Id. at 34-35.

> When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

Commonwealth v. Fletcher, 986 A.2d 759, 792 (Pa. 2009).

Pennsylvania's justification statute provides, in relevant part, as follows:

> (a) Use of force justifiable for protection of the person.-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> (b) Limitations on justifying necessity for use of force.--
> ….
>
> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat….

18 Pa.C.S.A. § 505 (emphasis added).

> The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in

imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

Commonwealth v. Mouzon, 53 A.3d 738, 752 (Pa. 2012) (quotation marks omitted).

"Although a defendant has no burden to prove a claim of self-defense before such a defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. Commonwealth v. Sanchez, 82 A.3d 943, 980 (Pa. 2013) (quotation marks omitted).

In Mouzon, our Supreme Court was faced with the issue of whether the appellee had presented sufficient evidence at trial to present the jury with a justification instruction. Id. at 747-52. The Court found that because the appellee had not testified at trial, or presented other evidence, regarding his subjective state of mind at the time of the shooting, a justification jury instruction was improper. Id. Our Supreme Court explained that

> [the] appellee did not testify and describe his subjective thinking, relying instead on inferences from the circumstances as observed by others.
>
> In the absence of specific evidence concerning appellee's subjective beliefs, he appears to proceed under the assumption that anyone in his circumstance would feel the necessity to employ deadly force in self-defense. ... Absent testimony or some other specific account of what appellee actually believed, the evidence was not sufficient to raise a jury question whether appellee subjectively believed that he had to use deadly force when he twice pulled the trigger.

Id. at 751-52.

Similarly, Hamilton neither testified at trial, nor presented any other evidence, regarding his subjective state of mind when he shot the victims. See N.T., 4/9-12/19, at Volumes I-III. Therefore, Hamilton did not present sufficient evidence to raise a justification claim, and was not entitled to a justification jury instruction. See Mouzon, supra; Sanchez, supra. Accordingly, any inaccuracy in the trial court's reading of the justification jury instruction constituted harmless error, and Hamilton's first claim fails. See Commonwealth v. Chmiel, 889 A.2d 501, 521 (Pa. 2005) (stating that "[h]armless error exists where … the error did not prejudice the defendant or the prejudice was de minimis….").

We will address Hamilton's second and third claims together, as they are related. Hamilton alleges that the trial court erred in not giving his requested jury instructions numbers 6 and 3, regarding justification pursuant to a citizen's arrest and robbery, respectively. Brief for Appellant at 37-40. Hamilton claims that he was attempting a citizen's arrest of the co-conspirators when he shot them. Hamilton argues that the instructions were necessary for the jury to find that he was justified in employing deadly force pursuant to a citizen's arrest. Relevantly, Hamilton requested that the trial court read language set forth in our Supreme Court's decision in Commonwealth v. Chermansky, 242 A.2d 238 (Pa. 1968). Hamilton

argues that the trial court's failure to read his requested instructions constituted fundamental error and requires a new trial. Id. at 38, 40.

In Chermansky, our Supreme Court set forth the law regarding the use of deadly force by a private person attempting to conduct a citizen's arrest. The Court stated,

> [a] private person in fresh pursuit of one who has committed a felony may arrest without a warrant. And in Pennsylvania we have always followed the common law rule that if the felon flees and his arrest cannot be effected without killing him, the killing is justified. We hasten to note that before the use of deadly force is justified[,] the private person ... must give notice of his purpose to arrest for the felony if the attending circumstances are themselves insufficient to warn the felon of the intention of the pursuing party to arrest him.

Id. at 40 (citations omitted; emphasis added).

Here, the record reflects that Hamilton gave no warning to any of the co-conspirators that he intended to arrest them for the robbery, and the circumstances were insufficient to warn the co-conspirators that Hamilton intended to arrest them. See N.T. (Volume II), 4/9-12/19, at 54-56 (wherein Heasley testified that Hamilton gave up his belongings, exited the vehicle, asked Barger if he knew about the planned robbery, then fired gunshots into the vehicle); id. at 91-92 (wherein Barger testified that Hamilton exited the vehicle, asked him whether he knew about the planned robbery, then fired gunshots into the vehicle). Thus, there was no evidence presented at trial upon which Hamilton could support his claim of justification pursuant to a citizen's arrest, and the trial court did not abuse

its discretion in declining to read Hamilton's requested jury instructions numbers 6 and 3. See Allen, supra; Chermansky, supra. Accordingly, Hamilton's second and third claims fail.

In his fourth claim, Hamilton alleges that the trial court erred in not giving his requested jury instruction number 4, regarding the voluntariness of his confession to police. See Brief for Appellant at 41-43. Hamilton acknowledges that the trial court addressed this claim prior to trial, in response to his pre-trial suppression Motion, but argues that the jury was entitled to make its own assessment of the voluntariness of his confession. Id. at 42. Hamilton claims that had the jury determined that his confession was involuntarily given, it would not have been permitted to consider Hamilton's confession in its assessment of guilt. Id.

Our review of the record discloses that Hamilton did not include this claim in his Pa.R.A.P. 1925(b) Concise Statement. See Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement … are waived."); see also Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005) (stating that "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."); Pa.R.A.P. 302 (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Thus, this claim is waived.

In his fifth claim, Hamilton alleges that the trial court erred by reading the Commonwealth's requested jury instructions numbers 3, 4, 5, and 7,

which described certain elements of first-degree murder and aggravated assault. Brief for Appellant at 44-45. According to Hamilton, these instructions directed the jury to find facts in favor of a finding of guilty as to Hamilton's aggravated assault charges, and thereby "invaded the province of the jury." Id. at 45.

Here, Hamilton fails to develop his claim with cites to the record or relevant legal authority. Hamilton makes bald claims that the instructions directed the jury to make certain conclusions of fact, without indicating what these facts were or citing to case law showing that the jury instructions were incorrect statements of law. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009). It is not the role of this Court to "formulate [an a]ppellant's arguments for him." Id. at 925. Accordingly, this claim is waived.

In his sixth claim, Hamilton alleges that the trial court abused its discretion in sentencing him in the high end of the standard range on each of his convictions, and in ordering that the sentences run consecutively. See Brief for Appellant at 46-50. This claim challenges the discretionary aspects of Hamilton's sentence.

"An appeal raising the discretionary aspects of sentencing is not guaranteed as of right; rather, it is considered a petition for permission to

appeal." Commonwealth v. Mulkin, 228 A.3d 913, 916 (Pa. Super. 2020).

Prior to reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Commonwealth v. Grays, 167 A.3d 793, 815-16 (Pa. Super. 2017) (citation omitted).

> When the appellant has not included a Rule 2119(f) statement and the Commonwealth has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa.R.A.P. 2119(f) sua sponte, i.e., deny allowance of appeal. However, this option is lost if the Commonwealth objects to a 2119(f) omission. In such circumstances, this Court is precluded from reviewing the merits of the claim and the appeal must be denied.

Commonwealth v. Kiesel, 854 A.2d 530, 533 (Pa. Super. 2004) (brackets omitted); see also Commonwealth v. Dawson, 132 A.3d 996, 1005 (Pa. Super. 2015) (denying an appellant's petition for permission to appeal the discretionary aspects of her sentence where the appellant failed to include a Rule 2119(f) statement in her brief and the Commonwealth objected).

Here, Hamilton filed a timely Notice of Appeal and raised his sentencing claim in a post-sentence Motion. However, Hamilton did not

include a Rule 2119(f) statement in his brief,[4] and the Commonwealth has objected to this deficiency. Brief for Commonwealth at 43. Accordingly, we are precluded from considering Hamilton's discretionary sentencing claim on appeal. See Kiesel, supra; Dawson, supra.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2020

_____

[4] Although Hamilton states in the discussion of his sixth claim that his "sentence violated a fundamental norm of the sentencing code and sentencing process," see Brief for Appellant at 47, he fails to explain how his sentence violated a particular fundamental norm underlying the sentencing process, with citations to legal authority. See Commonwealth v. Sauers, 159 A.3d 1, 16 (Pa. Super. 2017) (finding that the appellant had not complied with Pa.R.A.P. 2119(f) where he did not "articulate the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.").