J-S04036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CALVIN HALLUMS | : | |
| | : | |
| Appellant | : | No. 1448 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002892-2022

BEFORE: OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 31, 2025**

Calvin Hallums appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions for possession of a firearm prohibited, firearms not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia.[1] Hallums challenges the sufficiency and weight of the evidence, as well as discretionary aspects of his sentence. After careful consideration, we affirm.

The trial court set forth the facts of this case as follows:

During the evening of January 23, 2022, Ibrahim Abdelghani[2] []
and his brother, Ali Abdelghani [], were working at []

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105, 6106, and 6108, respectively.

[2] Ibrahim was sometimes referred to as Abe at trial. *See* N.T. Jury Trial, 10/3/23, at 40.

Neighborhood Market, a grocery store located on the 4600 block of Frankford Avenue in Philadelphia. When Ibrahim and Ali began their shifts that evening, their uncle,[3] Elmuiez Elmin, informed them about an incident from earlier that day involving [] Hallums. At that time, [Hallums] was a daily customer of the store. [] Elmin told [the Abdelghani brothers] that [Hallums] had cursed at [] Elmin and had threatened to fight him. [] Elmin also told them that [Hallums] was no longer permitted in the store.

At around 7:30 p.m. that evening, [Hallums] entered the store. Ibrahim approached [Hallums] near the coffee station and told him that he had to leave the store because of the prior altercation with Ibrahim's uncle. [Hallums] responded that [Hallums] had "checked" Ibrahim's uncle. [Hallums] further stated that he would not leave the store and that he would deal with Ibrahim after [he] was done with his coffee.

Angered by [Hallums]'s response, Ibrahim shoved [him] twice in the chest area and grabbed [Hallums] by the collar. [Hallums] then shoved Ibrahim onto an ice cream freezer. As [Hallums] and Ibrahim continued shoving one another, Ali came to his brother's aid, grabbed [Hallums] from behind, and pulled [him] off of Ibrahim. Ibrahim then punched [Hallums] three or four times before Ali eventually separated [them]. Ibrahim again told [Hallums] to leave the store. Eventually, [Hallums] began walking towards the store's exit. As [Hallums] did so, he pulled a silver handgun from his waistband.

[Hallums] pointed the handgun at Ibrahim and Ali, who were standing behind the freezer and a shelf. [Hallums] then stated, "I'm going to pop the shit out of you." Ibrahim and Ali, who were both armed, took cover behind some shelves and pulled out their firearms. [Hallums] then opened the store's door, briefly looked outside, and closed the door with his gun still drawn. Fearing that [Hallums] was about to shoot at them, Ibrahim fired his gun twice at [Hallums]. [Hallums] returned fire, wounding Ibrahim in the arm. [Hallums] continued to pursue Ibrahim through the store and shot at him again, wounding Ibrahim in his side. As Ali chased [Hallums] and fired back, [Hallums] crawled back to the door and fled from the store. Ibrahim was left with gunshot wounds on his

_____

[3] The Abdelghani brothers referred to Elmin as their uncle at trial, though Elmin is not actually their familial kin. **See** N.T. Jury Trial, 10/3/23, at 42.

stomach, ribcage, and left forearm. A gunshot also grazed Ali's right thigh.

Shortly after the shootout, Philadelphia Police Officer James Reilly responded to a call reporting gunshots in the area of the store. A man on the street flagged down the officer and told him that a man who had been shot had just run into a nearby apartment. Officer Reilly went into the apartment building, which was two or three blocks away from Neighborhood Market, and encountered [Hallums], who was bleeding. [Hallums] said that he had been shot a couple of times. Officer Reilly then transported [Hallums] to the hospital[, where he] was subsequently treated for six gunshot wounds.

Philadelphia Police Detectives later recovered multiple fired cartridge casings ("FCCs") from Neighborhood Market, including two .40 caliber FCCs, two 9mm FCCs, and four .45 caliber FCCs. The firearms belonging to Ibrahim and Ali were .40 caliber and 9mm handguns. The detectives did not locate any .45 caliber handguns. The detectives also recovered videos from surveillance cameras inside Neighborhood Market. The cameras captured the interactions between [Hallums], Ibrahim, and Ali, including the shooting incident.

At the time of the shooting incident, [Hallums] did not have a valid license to carry a firearm in the Commonwealth of Pennsylvania. [Hallums] also was ineligible to possess a firearm at that time due to a prior conviction for possession with intent to deliver a controlled substance.

Trial Court Opinion, 7/29/24, at 2-4 (internal citations omitted). On October 4, 2023, in a bifurcated trial, a jury convicted Hallums of firearms not to be carried without a license and carrying a firearm on public streets or public property in Philadelphia, and the trial court convicted Hallums of possession of a firearm prohibited. On February 2, 2024, the court imposed sentence, which it later amended on February 5, 2024, to include an aggregate term of 9½ to 19 years' incarceration, followed by three years' probation, with credit for time served. Hallums timely filed post-sentence motions for

reconsideration of his sentence, which the court denied on May 23, 2024.

Hallums then filed a timely notice of appeal, and he and the trial court have

complied with Pa.R.A.P. 1925.[4]

On appeal, Hallums raises the following issues for our review:

1. Whether the evidence introduced at trial and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth[,] as verdict winner, is insufficient to establish all elements of possession of firearm prohibited[] beyond a reasonable doubt?

2. Whether the evidence introduced at trial and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth[,] as verdict winner, is insufficient to establish all elements of firearms not to be carried [without a] license[] beyond a reasonable doubt?

3. Whether the evidence introduced at trial and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth[,] as verdict winner, is insufficient to establish all elements of carry[ing] [a] firearm[ on public streets or] public [property] in Phila[delphia] beyond a reasonable doubt?

4. Whether the jury verdict was against the greater weight of evidence as a matter of law to establish [Hallums]'s guilt beyond a reasonable doubt on all charges?

5. Whether the sentence imposed on [Hallums] was harsh and excessive and an abuse of discretion since the [sentencing] court failed to properly consider all of the sentencing factors of 42

_____

[4] Since the court amended its original judgment of sentence, we have corrected the caption to reflect that Hallums's appeal lies from his amended judgment of sentence, entered on February 5, 2024. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 (Pa. Super. 2010) (direct appeal lies from amended judgment of sentence where trial court amends judgment of sentence during period it maintains jurisdiction).

Pa.C.S.[] § 9721(b)[,] or any mitigating evidence[,] when it imposed the sentence in question?

6. Whether the [sentencing] court erred and abused its discretion in that it sentenced [Hallums] in the upper end of the sentencing guidelines[,] without considering mitigating factors[,] and only considered the seriousness of the offense when it imposed sentence?

7. Whether the [sentencing] court erred and abused its discretion in that it sentenced [Hallums] in the aggravated range[,] without considering mitigating factors[,] and only considered the seriousness of the offense when it imposed the aggravated range sentence?

Appellant's Brief, at 8-9 (unnecessary capitalization omitted; re-ordered for ease of disposition).

In his first three issues on appeal, Hallums raises challenges to the sufficiency of the evidence to sustain each of his convictions. For each conviction, Hallums essentially argues that the Commonwealth failed to establish Hallums's constructive possession of a firearm. More specifically, Hallums claims that, here, the alleged .45-caliber gun was never found, there was no gun powder residue found on Hallums's person, and there was no DNA or fingerprint evidence connecting Hallums to any gun. *See* Appellant's Brief, at 20-22.

The appellate standard of review for challenges to the sufficiency of the evidence is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by

the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation and brackets omitted).

In each of his first three issues on appeal, Hallums alleges that the Commonwealth failed to establish the element of possession—including constructive possession—of a firearm, such that each of his convictions must be vacated. The element of possession may be established "by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation and quotation marks omitted). Further, the testimony of one witness, alone, is sufficient to establish that a defendant actually possessed a firearm at the time of the commission of the crime. *See Commonwealth v. Antidormi*, 84 A.3d 736, 756-57 (Pa. Super. 2014). "'Constructive possession' is found where the individual does not have actual possession over the illegal item but has conscious dominion over it." *Commonwealth v. Heidler*, 741 A.2d 213, 215-16 (Pa. Super. 1999) (*en banc*).

Here, we conclude that the Commonwealth adduced sufficient evidence of Hallums's **actual** possession of a firearm where both Abdelghani brothers testified that they saw Hallums hold a firearm in his hand, aim it at them, and fire it at them and where the video evidence admitted at trial indisputably confirms the same. **See** N.T. Jury Trial, 10/3/23, at 51 (Ibrahim testifying "So[,] after that shot that I took, I moved more to the side to get cover because I already got shot in the arm and [Hallums] followed through to aisle 2, and that's when he took fire there, and that's when I got struck in my side."); **id.** at 80 (Ibrahim testifying that Hallums "took out the gun, and then walked to the door, and then aimed it at us before he even walked to the door"); **id.** at 94 (Ali testifying that Hallums "came in the store, and he's not supposed to be in the store because[,] my uncle[,] earlier he told [Hallums] not to come back, and then he came back, and a little altercation happened, and [Hallums] ended up taking out his firearm and shooting at us"); **id.** at 97 (Ali testifying that "[Hallums] started walking towards the door, and that's when he took out his gun. [Hallums] had it like in his pants. He took it out and he started saying stuff like, [']I'm going to pop the shit out you, Ock['], and all this other stuff he started saying."); **see also Lopez**, **supra**. Further, contrary to Hallums's claims, we observe that the doctrine of constructive possession is not relevant here because the Commonwealth adduced sufficient evidence of Hallums's actual possession of a firearm at the time he committed his crimes. **See Parrish**, **supra**; **see also Antidormi**, **supra**. Accordingly,

we conclude that Hallums is not entitled to any relief on his first three issues on appeal.

In his fourth issue on appeal, Hallums challenges the weight of the evidence. Nevertheless, we observe that Hallums has waived this claim for failure to preserve it pursuant to Pennsylvania Rule of Criminal Procedure 607(A). *See* Pa.R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion."). Since Hallums has failed to comply with Rule 607(A), we conclude that he has waived his fourth issue on appeal. ***See Commonwealth v. Bryant***, 57 A.3d 191, 196-97 (Pa. Super. 2012) (appellant's weight of evidence claim waived for failure to raise it in trial court prior to sentencing and for failure to file post-sentence motion challenging weight of evidence).

In his fifth, sixth, and seventh issues on appeal, Hallums challenges discretionary aspects of his sentence. An appellant may not challenge discretionary aspects of a sentence as of right. ***See Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). Rather, the appellate court treats an appellant's challenge to the discretionary aspects of a sentence as a petition seeking permission to appeal. ***See Commonwealth v. Heaster***, 171 A.3d 268, 271 (Pa. Super. 2017). To invoke this Court's jurisdiction to review a challenge to the discretionary aspects of a sentence, the appellant must satisfy the following four-part test:

(1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, ***see*** Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the [s]entencing [c]ode.

***Commonwealth v. Crawford***, 257 A.3d 75, 78 (Pa. Super. 2021), ***quoting***

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220-21 (Pa. Super. 2011). "If

a defendant fails to include an issue in his Rule 2119(f) statement, and the

Commonwealth objects, then this Court may not review the claim."

***Commonwealth v. Dawson***, 132 A.3d 996, 1005 (Pa. Super. 2015)

(citation, quotation marks, and ellipsis omitted).

Here, Hallums failed to include any Rule 2119(f) statement in his brief,

and the Commonwealth has objected. ***See*** Appellee's Brief, at 12.

Accordingly, we deny Hallums's petition for permission to appeal the

discretionary aspects of his sentence. ***See Dawson***, ***supra***; ***see also***

***Heaster***, ***supra***. Therefore, Hallums is not entitled to relief on his final three

issues on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/31/2025