J-S37023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNNY LOUIS FOWLER | : | |
| | : | |
| Appellant | : | No. 1391 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 3, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000676-2022

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 12, 2024**

Johnny Louis Fowler (Appellant) appeals from the judgment of sentence imposed following his guilty pleas to sixteen counts of selling firearms to an ineligible transferee (prohibited gun sale); two counts of dealing in proceeds of unlawful activities; and one count each of firearms not to be carried without a license, corrupt organizations, and conspiracy to commit prohibited gun sale.[1]  Appellant solely challenges the discretionary aspects of his sentence. We affirm.

The trial court detailed the factual history in its Pa.R.A.P. 1925(a) opinion:

> The … affidavit of probable cause supporting the complaint initiating this case, admitted into the record at [the time of Appellant's] guilty plea, [N.T. (Open Guilty Plea), 8/18/22, at] 8,

---

[1] **See** 18 Pa.C.S.A. §§ 6111(g), 5111(a)(1), 6106(a)(1), 911(b)(3), 903(a).

10 & Ex. C-1 ..., depicts a course of conduct starting in August of 2014 and continuing into April of 2019[,] in which [Appellant] purchased eighteen handguns on separate occasions at three different gun stores in counties neighboring [Montgomery County, sixteen of which are relevant to the instant appeal (collectively, the "16 guns" or "16 firearms")]. [Appellant], who was able to complete the purchases because he had no criminal history, falsely verified forms required to buy the guns by stating he was purchasing them for himself and no others. *Id.*

Three of the ... [16 guns] ultimately turned up at the scenes of arrests or crimes in far-flung locales.[2] ...

_____

[2] The trial court elaborated:

Police in New York City, in May 2018, found one [of the 16 guns], along with another stolen gun, in a car stopped in Brooklyn, New York, occupied by four individuals too young to possess a handgun there[. Police] trac[ed this gun] to a shooting and wounding of a person in Brooklyn in October 2017, and, after restoring [the gun's] obliterated serial number, back to [Appellant] as the registered owner through his gun-store purchase in June 2016; [Appellant] had not previously reported the gun stolen. Aff. Probable Cause[, 12/9/21, at] 7-8....

In November 2019, police in Pleasantville, New Jersey, recovered a second of the [16] guns ... [from the victim of a shooting] at a high[ ]school football game.... *Id.* at 10-11. Again, law[ ]enforcement officials restored [the gun's] effaced serial number, and identified [Appellant] as the registered owner via [a] gun-store purchase, made in November 2018; [Appellant] had never reported the gun stolen. *Id.*

In August 2021, Philadelphia Police stopped a vehicle and found the driver, who was [legally] prohibited ... from having a gun due to a prior conviction, in possession of [one of the 16 guns].... *Id.* at 12-13. [Appellant] was the registered owner by virtue of his gun-store purchase made in January 2019, and had never reported the gun stolen. *Id.*

Trial Court Opinion, 2/11/24, at 2.

        While [Appellant] was [making] … these gun [purchases] …, agents of the federal Bureau of Alcohol, Tobacco, and Firearms (ATF) had taken notice[. I]n April 2019[, ATF agents] met with [Appellant] at his Montgomery County home to ask about the multiple [gun] purchases. *Id.* at 15. [Appellant] first tried to legitimize [his purchases], but also distance himself from them, claiming the guns were recently stolen from his residence…. *Id.* at 15-16.

        But [Appellant] then recanted the story of a theft; he admitted to purchasing all of the firearms but one illegally, and to lying on the paperwork[, to the extent he represented that the firearms] were for him. *Id.* at 16. [Appellant] also told the [ATF] agents he still had one of the guns, at his place of employment. *Id.*

        The ATF agents came back [to Appellant's residence] the next day, and accompanied [him to his] workplace. *Id.* There[, Appellant] produced [a] gun, which he had purchased … less than a month earlier; the agents seized it, [as they were] concerned [that Appellant] might try to transfer it illegally to someone else. *Id.* at 14, 16. "During this interaction, [Appellant] admitted he believed the 'straw purchased' firearms went to New York and that he personally transported one of the firearms to New York." *Id.* at 16.

        Still, the very next day, [Appellant] went to his local police department and reported seven of the [16 guns] stolen from the trunk of his vehicle, where he claimed to have placed them "in late March or early April 2019," *id.*, before noticing them missing "on April 22, 2019," *id.*, the day before the ATF agents had first come to [Appellant's] house to ask about the gun purchases. The local police entered the [serial numbers of the] seven specific firearms [Appellant] reported [as stolen] (which were among those he had bought at one of the local gun stores beginning in August 2014 through July 2017) into the National Crime Information Center (NCIC) as stolen. *See id.* at 17. …

        … In November 2021, Montgomery County Detectives interviewed [Appellant] at a local police department to ask about his multiple gun purchases, his contacts with the ATF in April 2019, and his report to police immediately thereafter that seven of the guns had been stolen. *Id.* at 17-18. Detectives confronted [Appellant] with copies of the paperwork he had completed to

purchase the firearms, and he admitted to falsifying [the documents] as to the intended transferee(s), and that he had "straw purchased" all but two of the guns for other individuals. *Id.* at 18. … [Appellant] also admitted at that time that seven of the firearms had not been stolen from his vehicle, and his contrary report to police after meeting with the ATF agents in April 2019 was false. *See id.* at 18.

On December 9, 2021, the … [Commonwealth charged Appellant with] multiple counts each of [prohibited gun sale], conspiracy, dealing in proceeds of unlawful activities, falsification to authorities, corrupt organizations, and criminal use of facilities of communication, totaling 234 counts in all. [Complaint, 12/9/21,] at 2-8; [*see also* N.T., 1/21/22, at] 3-23….

Trial Court Opinion, 2/11/24, at 1-4 (footnote added).

Following proceedings not relevant to the instant appeal, on July 8, 2022, the Commonwealth filed notice of its intent to seek mandatory minimum sentences on the charges of prohibited gun sale, if Appellant was convicted of any of those charges. The Commonwealth stated,

in the event [that Appellant] is convicted of more than one count charging a violation of [18 Pa.C.S.A.] § 6111, the Commonwealth [] gives notice of its intention to seek the imposition of the mandatory [minimum] five[-]year prison sentence(s) on each count that reflects a second or subsequent violation of § 6111.

Notice of Intent to Seek Mandatory Sentences, 7/8/22, at 2. The Commonwealth pointed out that 18 Pa.C.S.A. § 6111(h)(1) provides, in relevant part, as follows:

A person who at the time of sentencing has been convicted of another offense under this section shall be sentenced to a mandatory minimum sentence of imprisonment of five years.

*Id.*; *see also* Notice of Intent to Seek Mandatory Sentences, 7/8/22, at 1-2. Section 6111 further provides, in subsection (h)(5), as follows:

> For the purposes of this subsection, a person shall be deemed to have been convicted of another offense under this section whether or not judgment of sentence has been imposed for that violation.

18 Pa.C.S.A. § 6111(h)(5); **see also Commonwealth v. Dawson**, 132 A.3d 996, 1004 (Pa. Super. 2015) ("Section 6111(h) requires that the trial court determine whether a previous conviction exists at the time of sentencing, without giving consideration to when the conviction occurred." (some citations and quotation marks omitted)).

The matter proceeded to a guilty plea hearing on August 18, 2022. Appellant entered an open guilty plea to the above-mentioned offenses.[3] N.T., 8/18/22, at 3. Following oral and written guilty plea colloquies of Appellant, the trial court accepted his pleas as knowingly, intelligently, and voluntarily tendered. **Id.** at 15; **see also id.** at 4-15 (oral colloquy);[4] **id.** Ex.

---

[3] Appellant pled guilty to, *inter alia*, sixteen counts of prohibited gun sale, fifteen of which required a mandatory minimum sentence under 18 Pa.C.S.A. § 6111(h)(1).

[4] During the oral plea colloquy, Appellant confirmed his understanding that, with respect to his guilty pleas to prohibited gun sale, "these charges [require] a mandatory minimum of five to ten years" in prison. N.T., 8/18/22, at 7; **see also** 18 Pa.C.S.A. § 6111(h)(1). Notably, Appellant further confirmed his understanding that the sentencing court "has the option, because [Appellant] pled guilty to] multiple counts involving mandatory minimum [sentences], to run [the sentences imposed on any those counts] either concurrently or consecutively at the time of [] sentencing…." N.T., 8/18/22, at 7; **see also id.** at 9 (prosecutor informing Appellant, "[I]t's up to His Honor whether or not he will impose [the separate sentences for the prohibited gun sale counts] consecutive or concurrent. But on these counts alone, [Appellant] could face 75 to 150 years [in prison] if th[e trial c]ourt is inclined to run the[ sentences] all consecutive.").

D-1 (written colloquy). In connection with the plea, the remaining charges against Appellant were *nolle prossed*. **Id.** at 4. The trial court deferred sentencing for the preparation of a presentence investigation (PSI) report and a risk assessment report. **Id.** at 15.

Sentencing occurred on January 3, 2023. Before the trial court imposed sentence, Appellant acknowledged the mandatory minimum sentences applicable to fifteen of his sixteen convictions of prohibited gun sale, pursuant to 18 Pa.C.S.A. § 6111(h)(1). N.T., 1/3/23, at 6. Appellant argued that based on the circumstances of the case, his youth, and lack of any prior criminal record, the sentencing court should order all the mandatory terms to run concurrently, as opposed to consecutively; thus, he sought an aggregate sentence of five to ten years in prison. **See id.** at 6-10.[5] The prosecutor countered the Commonwealth was "asking for a 30- to 60-year [aggregate] sentence on this case." **Id.** at 15; **see also id.** at 16-17 (emphasizing Appellant's "straw purchases" of the 16 guns and the criminal purposes for which some of those weapons were employed). The Commonwealth argued that to impose an aggregate sentence of five to ten years in prison would constitute "a slap in the face to what these mandator[y sentences] are for" under subsection 6111(h)(1). **Id.** at 19. Prior to the imposition of sentence,

_____

[5] Appellant also presented character witnesses, who testified to his good character and requested leniency. **See** N.T., 1/3/23, at 12-14.

- 6 -

the trial court also considered Appellant's allocution and apology, as well as the PSI. *Id.* at 22, 27.

The trial court imposed an aggregate sentence of 20 to 40 years in prison. *See id.* at 28-30. Specifically, on fifteen of Appellant's convictions of prohibited gun sale, the court imposed mandatory sentences of five to ten years in prison pursuant to 18 Pa.C.S.A. § 6111(h)(1). N.T., 1/3/23, at 28-30. Importantly to this appeal, the court ordered four of those mandatory sentences to run consecutively, with the remaining mandatory sentences running concurrently. *Id.* **The trial court imposed no further penalty on Appellant's remaining convictions.** *Id.*

On January 6, 2023, Appellant filed a timely post-sentence motion for reconsideration of sentence. Appellant claimed the trial court erred in (a) failing to consider mitigating factors and Appellant's rehabilitative needs; and (b) sentencing Appellant above "the aggravated range of the sentencing guidelines without stating the reasons [] on the record" for the sentence. Post-Sentence Motion, 1/6/23, ¶¶ 8-9; *see also id.* ¶ 10 (Appellant stating

he "has gainful employment waiting for him should the [trial c]ourt re[-]sentence [him] to a county sentence[6] with work release[.]" (footnote added)). The trial court denied the post-sentence motion by operation of law on May 9, 2023.[7]

Appellant timely filed a notice of appeal on May 26, 2023. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

I.   Did the trial court abuse its discretion by sentencing Appellant to an aggregate of 20 to 40 years' incarceration, because such a sentence was fashioned only to punish Appellant as it was primarily based upon the "seriousness of the offenses," speculation and speculative facts about where the firearms ended up?

II.  Did the trial court fail to adequately explain the reasons for its sentence?

Appellant's Brief at 2 (issues enumerated).

_____

[6] The trial court had no authority to impose a sentence of county imprisonment, given the five-year mandatory minimum sentences applicable under 18 Pa.C.S.A. § 6111(h)(1). **See** 42 Pa.C.S.A. § 9762(b)(3) (providing a sentence of incarceration in a county prison is only available where the "[m]aximum term[] [is] less than two years."); **see also** 18 Pa.C.S.A. § 6111(h)(3) ("There shall be no authority for a court to impose on a defendant to which this subsection is applicable a lesser sentence than provided for in paragraph [(h)](1)….").

[7] The trial court observed in its opinion that Appellant's counsel "didn't properly serve [the post-sentence motion] on the [trial court, which] remained unaware of it." Trial Court Opinion, 2/11/24, at 31; **see also id.** at 32 (observing the Clerk of Courts "provided no copy or notice of the [May 9, 2023,] order to [the trial court.]").

Appellant's interrelated issues challenge the discretionary aspects of his sentence, from which there is no absolute right to appeal.[8] **See Commonwealth v. Lawrence**, 313 A.3d 265, 286 (Pa. Super. 2024) ("Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." (citation and brackets omitted)). Rather, where, as here, the appellant preserved his sentencing challenge in a timely post-sentence motion, he must (a) include in his appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal; and (b) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. **Commonwealth v. Summers**, 245 A.3d 686, 691 (Pa. Super. 2021).

Here, Appellant's brief includes a Rule 2119(f) statement. **See** Appellant's Brief at 6-9 (asserting the trial court abused its discretion in (a) imposing an excessive aggregate sentence that was improperly based solely on the seriousness of Appellant's crimes; and (b) failing to state adequate reasons for the sentence on the record). Further, his claims present a substantial question. **See Commonwealth v. Macias**, 968 A.2d 773, 776

_____

[8] The "open" guilty plea Appellant entered permits him to challenge the discretionary aspects of his sentence. **See Commonwealth v. Tirado**, 870 A.2d 362, 365 n.5 (Pa. Super. 2005) (citing **Commonwealth v. Dalberto**, 648 A.2d 16, 20 (Pa. Super. 1994) (explaining that, when the plea agreement is open, containing no bargain for a specific or stated term of sentence, the defendant will not be precluded from appealing the discretionary aspects of his sentence)).

(Pa. Super. 2009) ("[A]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question" (internal citations omitted)); *see also* *Commonwealth v. Knox*, 165 A.3d 925, 929-30 (Pa. Super. 2017) (same).[9] Likewise, "[t]he failure to set forth adequate reasons for the sentence imposed has been held to raise a substantial question." *Macias*, 968 A.2d at 776. Accordingly, we review the merits of Appellant's challenge to his sentence.

Our standard of review of a discretionary sentencing challenge is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

_____

[9] However, a sentencing court's

> exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, **the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances**, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015) (emphasis added; internal citations and quotation marks omitted)). *Cf.* *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) ("an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question."). Instantly, Appellant abandoned on appeal his post-sentence motion claim that the sentencing court failed to adequately consider mitigating factors. *See* Appellant's Brief at 6-14.

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Reid*, ___ A.3d ___, 2024 PA Super 200, at *6 (Pa. Super. 2024) (citation omitted).

The Pennsylvania Supreme Court has explained:

The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) (citations and quotation marks omitted).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. In conducting appellate review, this Court cannot reweigh sentencing factors and impose judgment in place of the sentencing court where the lower court was fully aware of all [] factors.

*Lawrence*, 313 A.3d at 286 (internal citations, quotation marks, and brackets omitted). Further, a "sentencing court has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (citation omitted); *see also Commonwealth v. Celestin*, 825 A.2d 670, 676 (Pa. Super. 2003) (same).

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. McClendon*, 589 A.2d 706, 713 (Pa. Super. 1991) (*en banc*) (stating a sentencing court "should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation."). A sentencing court must also consider the sentencing guidelines.[10] *See* 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008).

A sentencing court is statutorily required to disclose in open court the reasons for the sentence imposed. *See* 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Egan*, 679 A.2d 237, 239 (Pa. Super. 1996) ("The failure to provide such a statement of reasons for the sentence imposed is reversible error requiring resentencing." (citation omitted)). However, a

> sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the

_____

[10] In its opinion, the trial court correctly pointed out, "[t]he recommended ranges of the Sentencing Guidelines, 204 Pa. Code § 303.16(a), had no bearing on the sentence[,]" "in light of the mandatory minimum sentences the [trial c]ourt was obligated to, and did, impose under … 18 Pa.C.S.A. § 6111(h)…." Trial Court Opinion, 2/11/24, at 59 (citations modified); *see also* 18 Pa.C.S.A. § 6111(h)(3) (providing, *inter alia*, the "[s]entencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.").

sentencing court's consideration of the facts of the crime and character of the offender.

*Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012) (citation omitted); *see also Commonwealth v. Coulverson*, 34 A.3d 135, 145 (Pa. Super. 2011) (stating a sentencing court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations enunciated in that section." (citations and brackets omitted)). The sentencing court "can satisfy this disclosure requirement by indicating, on the record, that [the court] has been informed by a [PSI]." *Egan*, 679 A.2d at 239 (citing *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988)).

"It is well settled that 'imposition of consecutive rather than concurrent sentences rests within the trial court's discretion.'" *Commonwealth v. Foust*, 180 A.3d 416, 434 (Pa. Super. 2018) (quoting *Commonwealth v. Harvard*, 64 A.3d 690, 703 (Pa. Super. 2013)); *see also Hill*, 66 A.3d at 370.

> Although Pennsylvania's system stands for individualized sentencing, **the court is not required to impose the "minimum possible" confinement**. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

*Commonwealth v. Brown*, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citation omitted) (emphasis added)). "**An appellant is not entitled to a 'volume**

**discount' on his multiple convictions by the imposition of concurrent sentences**." *Lawrence*, 313 A.3d at 286 (emphasis added; citation and brackets omitted); *see also Foust*, 180 A.3d at 434-35 (collecting cases and stating, "extensive case law in this jurisdiction holds that defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence.").

Instantly, Appellant claims the trial court abused its discretion in imposing an excessive aggregate sentence of 20 to 40 years in prison. *See* Appellant's Brief at 9-14. Appellant contends the trial court improperly "based its reasoning for its sentence on seemingly speculative facts and unknown but presumed harm" "involving the 'unrecovered firearms' put into the stream of commerce by Appellant." *Id.* at 11. According to Appellant, the trial court based the excessive sentence solely on the seriousness of his crimes:

> [T]he trial court reasons that the seriousness of the offense[s] here dictates that a sentence cannot and must not be less than 20 to 40 years' incarceration solely for the seriousness of the offense. The trial court gave no explanation and reasons as to how this sentence effectuates the other purposes of sentencing found in 42 Pa.C.S.A. § 9721(b).

*Id.* at 12 (citation modified).

Appellant further contends "this sentencing lacked the individualized treatment at sentencing which is constitutionally and statutorily due to Appellant…." *Id.* at 14; *see also id.* ("Appellant [] deserves his own tailored

- 14 -

sentence, based upon him and his life, his offenses and the facts of his case, not the speculation about the future."). Specifically, Appellant avers the trial court, in its 1925(a) opinion,

> compared this case to that of **Commonwealth v. Michael Henry**, [321 A.3d 943,] 2315 EDA 2023 … [(Pa. Super. 2024) (unpublished] memorandum[)], wherein this Court affirmed the appellant's [aggregate] sentence of 20 to 66 years [of] incarceration for 9 illegal [firearm] straw purchase[] transfers, multiple of which [appellant sold] to Police Officer Brad Fox's murderer.

Appellant's Brief at 13 (some capitalization modified);[11] **see also** Trial Court Opinion, 2/11/24, at 53-56 (discussing **Henry**).

The Commonwealth counters the trial court did not abuse its discretion, where it (a) stated adequate reasons on the record for the non-excessive sentence; and (b) considered Appellant's individual circumstances and all relevant sentencing factors. **See** Commonwealth Brief at 11-15. The Commonwealth observes Appellant had 15 convictions of prohibited gun sale, each of which required a five-year mandatory minimum sentence under 18

---

[11] Contrary to Appellant's claim, **Henry** did not implicate the discretionary aspects of the appellant's sentence. Rather, the appellant in **Henry** challenged the dismissal of his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. **See generally Henry**, 321 A.3d 943. **But see Commonwealth v. Henry**, 122 A.3d 446, 3559 EDA 2013 (Pa. Super. 2015) (unpublished memorandum at 7-10) (affirming appellant's judgment of sentence, *i.e.*, an aggregate term of 20 to 66 years' incarceration, imposed on appellant's numerous violations of 18 Pa.C.S.A. § 6111, and rejecting appellant's challenge to the discretionary aspects of his sentence). This Court affirmed the PCRA court's ruling, holding appellant's "PCRA petition is patently untimely and meets no exception to the PCRA's one-year time-bar." **Henry**, 321 A.3d 943 (unpublished memorandum at 11).

Pa.C.S.A. § 6111(h)(1). Commonwealth Brief at 11. The Commonwealth emphasizes that "[w]hile [Appellant] pleaded guilty to 15 counts [of prohibited gun sale] that carried a mandatory minimum sentence, the [trial] court imposed [sentence on] **only four** of those [counts] to run consecutive." *Id.* at 14-15 (emphasis added); *see also id.* at 11 ("[Appellant] is not entitled to a volume discount.").

The Commonwealth further contends "[Appellant's] claim that the [sentencing] court focuse[d] solely on the severity of the crime[s] is belied by the record." *Id.* at 12. According to the Commonwealth,

> [t]he record makes clear that the trial court considered [Appellant's] youth, family history, his words in allocution and his potential for rehabilitation. The court fashioned a sentence commensurate with the seriousness of the offense, its impact on the community, and the rehabilitative needs of [Appellant].

*Id.* at 15.

At Appellant's sentencing hearing, the trial court explained the reasons for its sentence:

> THE COURT: I read this file…. I read the letter from [Appellant's] coach [written on Appellant's behalf]. I read the letter from [Appellant's] pastor. I read [the letter] from a magistrate judge. And in total, all were very supportive of [Appellant].
>
> ….
>
> And then I read the police reports that flowed from the[ 16] firearms. You have a total of 16 firearms that were placed in the hands of people who should not have possession of a firearm. That this … purchasing of firearms started soon after [Appellant's] 21st birthday.
>
> ….

- 16 -

[Appellant] purchased 16 firearms for … individuals [ineligible to possess firearms]. [One of the 16 firearms was] … recovered in New York with four people who were too young to possess a firearm.

[Another of the 16 guns was] used in a shooting in New York. … [Another gun was found] … on a victim at a shooting at a high school in [New Jersey]. [Another gun] was found during a police [traffic] stop on January 9th of 2019. And when [Appellant] had [an] opportunity to talk to the police about this, he [falsely] said that seven of [the 16] guns were stolen.

So what do I do with all this information? … You have this young man[, Appellant,] who has a tremendous family support, tremendous support from [his high] school, [and] from coaches. And this same person knowingly put[] these deadly weapons into the hands of people who shouldn't have them.

You have [defense counsel] here who's asking the court to impose a five- to 10-year sentence because of [Appellant's] background.

We have the [prosecutor,] who … says, Judge, we've only got three of the[ 16] guns accounted for. There's another 13 guns out [in the community] that could be used right now to kill people….

We have [Appellant's] mother here whose heart is breaking for her son.

On the other hand, we are faced with the wors[t] pandemic of gun violence this region has ever seen.

So [sentencing] falls in my lap. What is just? What is right?

….

I just want each and every one of you to know that this is the toughest responsibility of a judge…. I have the community[, which] put their trust in me to do what is right. And you have [Appellant] here who is also putting his trust in me to not sentence him to a day longer than what is just.

- 17 -

....

> **I read the** [**PSI**] **report**. And this report lays out the mandatory minimum[ sentences] … [implicated] in this case.
>
> ....
>
> I have reviewed the [sentencing] guidelines as well [] in this case…. It's a mandatory minimum [sentence on 15 of Appellant's 16 convictions of prohibited gun sale].
>
> I've read [Appellant's] family history and the background of each of [his] family members. [The court also] considered [Appellant's] physical and mental condition[,] where he has no history of problems…. He … was not a heavy drinker. He graduated from Pottsgrove High School, [was a] star athlete, and so forth.
>
> So, these are all the things that I considered in deciding what I believe is an appropriate sentence in this matter.

N.T., 1/3/23, at 23-28 (emphasis added; some capitalization modified); *see also id.* at 28-30 (imposition of sentence).

The foregoing demonstrates that there is no merit to Appellant's claim the sentencing court failed to state adequate reasons on the record for its sentence. *See id.* at 23-28; *see also Egan*, 679 A.2d at 239 (stating a sentencing court can satisfy the requirement that it place adequate reasons for the sentence on the record "by indicating, on the record, that [the court] has been informed by a [PSI]."); *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." (citing *Devers*, 546 A.2d at 18)).

Moreover, the record belies Appellant's claim that the trial court improperly based its sentence solely upon the seriousness of Appellant's crimes. *See*, *e.g.*, *Commonwealth v. Knox*, 219 A.3d 186, 199 (Pa. Super. 2019) (rejecting appellant's claim that the trial court abused its sentencing discretion in focusing solely on the seriousness of the offense, where the court expressly considered appellant's PSI as well as other evidence at sentencing). In its Rule 1925(a) opinion, the trial court concluded it

> did not abuse [its] discretion in sentencing []Appellant to an aggregate term of imprisonment of twenty to forty years,[12] consisting of fifteen separate mandatory minimum terms of five to ten years' imprisonment as required by [18 Pa.C.S.A. § 6111(h)(1)], only four of which the [c]ourt in its discretion ran consecutively, as appropriate punishment for [Appellant's] five-year-long course of conduct in which he put more than fifteen illegally-purchased firearms into circulation among the criminal element, and later tried to cover his tracks by making false reports to police about some of the guns[] being stolen[,] when authorities finally began to piece together his illegal gun-trafficking activities.

Trial Court Opinion, 2/11/24, at 61-62 (footnote added); *see also id.* at 61 (trial court opining it "adequately justified the four consecutive mandatory minimum five- to ten-year terms it imposed by reference to the repeated offenses [Appellant] committed over a protracted period of time[, and where he] lied about [the firearm purchases] when they were discovered…."); *id.* at

_____

[12] We reiterate that this sentence was significantly less than the sentence requested by the Commonwealth. *See* N.T., 1/3/23, at 15 (Commonwealth stating it was "asking for a 30- to 60-year [aggregate] sentence on this case.").

56 (pointing out that "the vast majority of the straw-purchased weapons have never been found.").

The trial court further stated:

> [T]he alleged excessiveness of the four consecutive mandatory minimum sentences of five to ten years the [c]ourt imposed [on] four [convictions of prohibited gun sale] … cannot be judged in isolation from the other sentences [Appellant] received, and did not receive, for crimes associated with those transfers as well as the other dozen or more weapons he illegally put into circulation. Especially given the aggregate sentence [Appellant] could have [received, his aggregate sentence of] twenty to forty years[' imprisonment] was not excessive.

*Id.* at 58-59; *see also id.* at 57 ("[A]side from the cumulative punishment reflected in the [] consecutive sentences [imposed on four prohibited gun sale convictions, Appellant] received no [further] punishment for any" of his remaining convictions).

Finally, there is no merit to Appellant's claim of the trial court's improper consideration of our prior decision in *Henry*, *supra*. Although the trial court mentioned *Henry* in its Rule 1925(a) opinion, the record clearly reflects the court imposed an individualized sentence upon Appellant, and nothing precluded the court from considering *Henry*.

Based on the foregoing, Appellant failed to establish the trial court abused its ample discretion in imposing his sentence. Neither of his issues merits relief.

Judgment of sentence affirmed.

- 20 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2024